Timothy A. Scott (SBN 215074)
E: TScott@McKenzieScott.com
Marcus S. Bourassa (SBN 316125)
E: MBourassa@McKenzieScott.com
McKENZIE SCOTT, PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
Facsimile: (619) 202-7461

*Attorneys for Defendant*
*Carlos Manuel da Silva Santos*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>CARLOS MANUEL DA SILVA SANTOS (1),<br>Defendant. | Case No.: 3:23-cr-02507-RSH-1<br>**CARLOS SANTOS'S RESPONSE IN OPPOSITION TO EXSAN DE MEXICO'S MOTION FOR RECONSIDERATION AS TO RESTITUTION**<br>Hon. Robert S. Huie |

Exsan de Mexico, S.A. de C.V.'s (hereinafter "Exsan") motion for reconsideration ("Motion") should be denied. It is procedurally defective, unsupported by law, and unsupported by fact. The Court has already conducted a full evidentiary hearing at which Exsan's CEO testified and Exsan's counsel argued. After carefully considering the evidence, the Court found that Exsan and the Government had failed to establish reliance on any false statements and denied restitution. Exsan now seeks a second bite at the apple without presenting any new facts, law, or permissible grounds for reconsideration.

Mr. Santos respectfully requests that the motion be denied without requiring his attendance at any further hearing because any hearing would disrupt his impending transfer, earned time credits, and timeline for seeking an international treaty transfer to complete his sentence in Portugal.

## I. THE COURT SHOULD RESOLVE EXSAN'S MOTION WITHOUT A HEARING OR, AT A MINIMUM, IN MR. SANTOS'S ABSENCE.

For the reasons set forth below, the Court should deny Exsan's motion. The Court lacks jurisdiction to address it and it fails in a variety of additional ways. Mr. Santos begins his opposition here by requesting the Court deny the motion without requiring his attendance at any hearing because doing so may cause wholly unnecessary prejudice to him, even if the Court were to grant Exsan's motion.

The Court is *not* required to hold an in-person hearing on issues of restitution if they can be decided on the pleadings alone. *United States v. Mehmood*, 829 F. App'x 203, 205 (9th Cir. 2020). Rather, the Court "must provide notice and a pre-deprivation opportunity for a defendant to raise arguments opposing restitution." *Id. see also, United States v. Garg*, No. CR21-0045-JCC, 2025 WL 641257, at *1 (W.D. Wash. Feb. 27, 2025) (declining to hold a restitution hearing notwithstanding defendant's attempt to withdraw any waiver of a hearing).

Mr. Santos hereby expressly waives any right to request further hearing on Exsan's motion for reconsideration of restitution. Meanwhile, as evidenced by this filing, Mr. Santos has both notice and ample opportunity to respond.

Insofar as the Court decides to hold a hearing, Mr. Santos requests that his presence be waived. His presence is not required for a conference or hearing on a legal question. Fed. R. Crim. P. 43(b)(3). Mr. Santos raises several legal issues in opposition to Exsan's motion that enable resolution of the motion without reaching any factual issues. Nor is his presence required for a proceeding that involves the correction of a sentence under Rule of Criminal Procedure 35(a). Fed. R. Crim. P. 43(b)(4). As set forth below, Rule 35(a) is the *only* avenue through which Exsan could even have theoretically sought reconsideration of the Court's restitution judgment and Mr. Santos's presence is not required for a hearing on such a motion.

Requiring his attendance would risk prejudice by prolonging his

incarceration and delaying his possible reunion with his family. Mr. Santos has already been designated to a facility outside this district and awaits transfer. The Bureau of Prisons does not disclose transfer dates, and he may be moved at any moment. If transferred, shuttling him back and forth for a hearing would impose significant hardships, disrupt his intake process, and create delays. He cannot begin accruing earned-time credits under the First Step Act until intake is completed, and a forced return for a hearing would extend his imprisonment. Moreover, his plea agreement requires prosecutors to support his treaty-transfer application to Portugal, which cannot proceed until he is received at his designated facility.

Because no hearing is required on Exsan's motion—much less Mr. Santos's presence—the Court should resolve the motion on the pleadings or, at minimum, waive his presence at any hearing confined to legal issues or Rule 35..

## II. THE COURT LACKS JURISDICTION TO RESOLVE EXSAN'S MOTION BECAUSE THE FINAL JUDGMENT ISSUED MORE THAN 14 DAYS AGO.

Turning to the motion itself, the Court must first determine whether it has jurisdiction to address Exsan's motion before reaching the merits. *See United States v. Reves*, 774 F.3d 562, 565 (9th Cir. 2014) (jurisdictional issue must be addressed before district court could "pass on any other aspect" of a motion). Upon doing so, the Court will find that it lacks jurisdiction and must deny the motion on that basis alone.

Only Federal Rule of Criminal Procedure 35, not Civil Rules 59 or 60, could conceivably allow modification or correction of the final restitution order, but the Court's jurisdiction to do so lapsed on July 31, 2025.

### A. Exsan Is Mistaken in Applying Civil Rules 59 and 60.

Exsan errs in asserting that Federal Rules of Civil Procedure 59(e) and 60(b) apply here. In "the clearest possible language," the Ninth Circuit has held:

[A] district court does not have inherent power to resentence defendants

> at any time. Its authority to do so must flow either from the court of appeals mandate under 28 U.S.C. § 2106 (1982) or from Federal Rule of Criminal Procedure 35.

*United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997), *as amended on reh'g* (Aug. 4, 1997) (quoting *United States v. Minor*, 846 F.2d 1184, 1187 (9th Cir.1988)). Where Courts have found expansion of that authority, their "flexible power is derived from the equitable nature of habeas corpus relief" pursuant to 28 U.S.C. § 2255. *Id.* There is no other, inherent authority for the Court to reopen Mr. Santos's sentencing.

Exsan cites two inapposite district court cases for the proposition that it can bring a motion for reconsideration under *Civil* Rules 59 and 60: *United States v. Lopez-Ontiveros* and *United States v Amezcua.*[1] In both cases a criminal defendant first sought to reduce their prison sentences under 18 U.S.C. § 3582, those motions were denied, and their motions for reconsideration were similarly denied. Neither case involved restitution, which is subject to a different statutory scheme.

Meanwhile, both cases relied upon *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000), as their authority for permitting a motion for reconsideration of the request to reduce a sentence. *Martin*, for its part, was a habeas case wherein the Ninth Circuit explicitly grounded its legal holding in the unique context of habeas proceedings under 28 U.S.C. § 2255, which are quasi-civil. *See id.* ("Motions for reconsideration after a final order are therefore available in § 2255 cases," and "the Section 2255 Rules are best read, through their cross-references to the Federal Rules of Civil Procedure"). Thus, the statutory foundation from which courts derive a basis for revisiting sentencing under the civil rules of procedure is

---

[1] Exsan's brief does not provide a full citation, but they appear to be the following: *United States v. Lopez-Ontiveros*, No. 15-CR-575-GPC, 2021 WL 165037 (S.D. Cal. Jan. 19, 2021) and *United States v. Amezcua*, No. 1:93-CR-5046-AWI-1, 2015 WL 5165235 (E.D. Cal. Sept. 2, 2015), *aff'd*, 670 F. App'x 454 (9th Cir. 2016).

section 2255.

Neither *Lopez-Ontiveros* or *United States v Amezcua* arose in the context of habeas and the district courts may not have given close attention to that distinguishing factor from *Martin* since they were denying the motions for reconsideration anyhow. But, insofar as *Lopez-Ontiveros* or *Amezcua* are persuasive, their context was at least analogous to a habeas proceeding or prelude thereto. A defendant who can meet Rule 59's high standard for reconsideration of a sentence reduction would have a similarly sound basis for a motion under section 2255. Resolving such a motion under Rule 59 rather than awaiting a section 2255 motion avoids the impracticality of the latter where a district court knows it will need to resolve the underlying merits in one context or the other.

In contrast to *Lopez-Ontiveros* and *Amezcua*, an order denying restitution here is *not* analogous in any way to proceedings under section 2255 and has no relation thereto. A section 2255 motion is only available to "[a] prisoner in custody under sentence," 28 U.S.C. § 2255, and Exsan is not such a person.

"A federal court has no inherent power to order restitution." *United States v. Hicks*, 997 F.2d 594, 600 (9th Cir. 1993). The rules and procedures are set out in statute. *Id.* Exsan does not identify any provision of those statutes contemplating a motion for reconsideration, let alone by reference to civil rules on such matters. There is no such provision.

**B. The Only Applicable Basis for Modifying a Restitution Order Here Was Rule 35, But Jurisdiction to Do So Lapsed.**

In contrast to habeas proceedings, the "procedures under section 3664 shall apply to all orders of restitution." 18 U.S.C. § 3556. And this is not a situation in which Exsan is without any recourse if it disagreed with the Court's restitution order.

Pursuant to 18 U.S.C. § 3664(o), "an order of restitution <u>is a final judgment</u>," that is only subject to change under particular, delineated statutory provisions:

- Federal Rule of Criminal Procedure 35 (hereinafter "Rule 35") (allowing corrections from "arithmetical, technical, or other clear error" within 14 days of

sentencing);

- 18 U.S.C. § 3565 (revocation of probation);
- 18 U.S.C. § 3572 (relating to judgments with combination of fines and restitution);
- 18 U.S.C. §§ 3613A and 3614 (relating to default or willful failure to pay by defendant);
- 18 U.S.C. §§ 3664(d)(5) (relating to newly discovered loss) and (k) (changes owing to defendant's economic circumstances); and
- 18 U.S.C. § 3742 (authorizing review on appeal by either party).

18 U.S.C. § 3664(o) (emphasis provided).

Examining those limited statutory bases for questioning the finality of a restitution order, the only arguable basis for Exsan's motion under the statutory provisions governing sentencing and restitution would be Rule 35's modification for "clear error." But that provision is unavailing.

Rule 35's "fourteen-day period to correct a sentence for arithmetical, technical, or other clear error is jurisdictional." *United States v. JDT*, 762 F.3d 984, 1005 (9th Cir. 2014). "[A] district court cannot adjust a sentence outside of the fourteen-day window even if the Rule 35(a) motion is filed within that window." *Id.* "The Committee expressly noted that subsection (c) [the predecessor of the modern Rule 35 subsection (a)] was intended to codify the court's 'inherent authority' to modify sentences, but with more stringent limitations." *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1029 (9th Cir. 1999). Absent compliance with those time limits, "the district court *cannot* modify a defendant's sentence. *Id.* (emphasis in original).

Here, the Court issued its restitution findings on July 17, 2025, and as of July 31, 2025, it lost jurisdiction to resolve Exsan's request on its merits.

A contrary finding would require this Court to simultaneously read Rule 35 (and § 3664's cross-reference to Rule 35) as surplusage in the United States Code while assigning itself an inherent authority the Ninth Circuit has expressly rejected.

*United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997) (no inherent authority to resentence); *United States v. Hicks*, 997 F.2d 594, 600 (9th Cir. 1993) (no inherent authority to order restitution).

Since the Court is obligated to determine that it has jurisdiction over Exsan's motion before reaching the merits and that jurisdiction is lacking, the Motion should be denied.

## III. EXSAN'S MOTION ALSO FAILS ON ITS MERITS.

Even if the Federal Rules of Civil Procedure applied here, Exsan would still fail to meet the demanding standard for reconsideration. Exsan has not, and cannot, show that its request falls within the ambit of Rules 59 or 60.

### A. Exsan Cannot Satisfy Rule 59(e).

Under Rule 59(e), "[r]econsideration is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A "motion for reconsideration should not be granted, absent highly unusual circumstances." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). The Ninth Circuit permits such motions only if the moving party (1) presents newly discovered evidence, (2) demonstrates that the court committed clear error or its decision was manifestly unjust, or (3) identifies an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Notably, although Exsan repeatedly refers to Rule 59 and sets forth at least some of the preceding standards, Exsan never claims to fall within the ambit of any of those three categories. That alone is fatal to its motion.

Nor can it claim to fall within those three categories.

#### 1. Exsan Does Not Present Newly Discovered Evidence

Searching Exsan's motion for anything that might fit these categories, it appears Exsan is upset that it relied upon the Government to present its best case to

the Court and is unhappy with the Government's efforts in that regard and hopes now to supplement the record with additional documents.

Much of Exsan's filing consists of a variety of exhibits unadorned by any authenticating declaration. Exsan apparently contends that these documents should have been presented to the Court before the hearing.[2] However, Exsan cannot simply reargue the issues now by attempting to supplement the record. *See Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("The overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence'"). Exsan concedes this evidence is not new and that it has possessed it for years.

**2. There Is No Intervening Change in Law.**

Exsan's motion does not claim any change in law that should alter the Court's analysis.

**3. The Court's Finding Was Not Clear Error or In Any Way Unjust.**

At bottom, Exsan appears to be disappointed in the Government's presentation and its own. But that does not mean the Court's findings based upon the evidence properly presented were clear error, let alone manifestly unjust. Quite the contrary, the Court's ruling was correct and the Court gave Exsan every

---

[2] Many of the documents Exsan presents here *were* provided to the Court in advance of the restitution hearing. For example, Exsan's counsel argues that a presentation sent to Exsan was of particular significance. Motion at 1 citing Exhibit 3 to the Motion. Indeed, this presentation is the only specific claim Exsan makes to having received false information before entering its agreement with Ethos. *Id.*

But that presentation was already in evidence and submitted by the Government in advance of the restitution hearing. *Compare* Government Exhibit 17A *with* Exsan Exhibit 3 pages 33-58. And the presentation actually came up during the hearing. Transcript at 93-94 (describing the "slide deck" and whether Mr. Sanchez-Navarro had testified on the subject).

opportunity to present its case.

As an initial matter, Exsan does not identify any authority for reconsideration of restitution where a victim is dissatisfied with the Government's presentation, let alone where its own counsel was also an active participant in the restitution hearing. The silence is deafening.

Exsan apparently (its lawyer argues) made a decision, aided by its own counsel, to rely partially upon the government to represent its interests. But "[a]ll litigants, including the government, must live with their litigation decisions, even if they regret those decisions in hindsight." *United States v. Foster*, 763 F. Supp. 2d 1086, 1091 (D. Minn. 2011).

Much of Exsan's argument now is predicated upon its claimed lack of preparation to testify, lack of interpreter, and apparent surprise at having to fill in for the Government's omissions. However, even with additional time to prepare a motion for reconsideration, Exsan still has not submitted any declaration describing *what, if anything, Mr. Sanchez-Navarro would have said or testified to differently* had he been allowed to prepare. The Court's basic rules provide that "Criminal motions requiring a predicate factual finding must be supported by declaration(s)." L.R. 47.1(g). But Exsan has submitted no such declaration, let alone evidence calling the Court's ruling into question.

Nor is this issue new – the lack of evidence was the basis upon which the Court rejected Exsan's request. The Court repeatedly emphasized during the hearing and to Exsan's counsel that *evidence*, not argument, is what was lacking. *See, e.g.,* Transcript[3] at 53 (The Court: "A letter from counsel is not the same as a sworn declaration by someone with personal knowledge. . . . reading carefully the

---

[3] Attached to this opposition are the relevant portions of the restitution hearing transcript, including those cited herein as well as all of Mr. Sanchez-Navarro's testimony and argument regarding Exsan's request for restitution. Citations are to the internal pagination, not the page length of the excerpts.

materials before me, I simply have not been presented with sufficient evidence of causation, so I decline to award restitution as to Ferrari"), *id.* at 92 (to Exsan's counsel "I understand why you would draw the inference that your client was defrauded, but I need to have evidence"), *id.* at 95-96 (re: Exsan "I find there is insufficient evidence . . . the testimony was very generalized in terms of the representation that was made. . . .But I don't find that the testimony establishes that there was reliance on a false statement").

Nor can Exsan place blame on the government for not representing it well. Exsan was simultaneously represented by its own counsel who was actively involved in the hearing and presentation of Exsan's evidence. At the outset of the restitution hearing, Exsan's counsel acknowledged it had not coordinated with the government to present Mr. Sanchez-Navarro's testimony and that Exsan's counsel represented its interest in calling Mr. Sanchez-Navarro as a witness. Transcript at 14. Thereafter, during argument, the Court specifically inquired of Exsan's counsel whether Exsan had any other evidence to present which would support an inference it had been defrauded by Mr. Santos and Exsan's counsel, after sitting through the hearing and presenting Mr. Sanchez-Navarro's testimony, answered that he did not. Transcript at 92. Against this background, it is impossible to accept that Exsan should get another opportunity to argue restitution. Its own counsel presented its case at the hearing and conceded it had no other evidence to present.

To be fair, Exsan has submitted a slew of exhibits. But none of them are addressed to the issues the Court identified in its ruling. Even if the Court accepted them, which it should not, there is nothing new in Exsan's motion that could conceivably justify reconsideration.

By May 2025, Exsan's email exhibits show the prosecutor specifically asking Exsan's counsel for any emails and attachments "that reference financial balance sheets, bank statement account balances, Ethos net worth, etc." Exhibit 9 at 4. In other words, the prosecutor inquired about emails that would indicate they had been

victims entitled to restitution. Although Exsan claims now that the government failed to present evidence it gave them, Exsan still has not submitted any such document or email. None existed in relation to this deal.

The only quasi-specific reference to a purportedly false statement prior to Exsan entering its finance agreement is at page 2 of the Motion, wherein Exsan's lawyer argues that it detrimentally relied upon claims in a presentation Roberto Suarez Espinoza sent to Exsan between January and February 2023. The motion does not present any evidence showing Mr. Suarez sent it to Exsan or in what context.[4] The motion asserts that the presentation from Mr. Suarez, a broker with independent financial incentives to close the deal, included "false representations as to the amounts under management by Ethos." Motion at 2. But it is not clear to what portion of that presentation Exsan's counsel is referring and undersigned counsel does not see any such claim in the exhibit itself.

Furthermore, the presentation exhibit is not new, most of Exsan's Exhibit 3 here was already in evidence and discussed during the restitution hearing. *See* supra n.2. If Exsan felt that it proved the case for restitution, its counsel had every opportunity to argue the matter during the restitution hearing. Exsan does not identify anything *different or new* in the second, almost completely analogous version of the presentation it claims to have also received from Mr. Suarez.

Meanwhile, although Exsan's lawyer asserts that it detrimentally relied on something false in the presentation from Mr. Suarez, Mr. Sanchez-Navarro testified unequivocally,

> Q Roberto [Suarez] was the one who convinced you to go forward with this deal; right?
> A Yes.

---

[4] Motion at 2. Exsan's counsel asserts the timing and that Mr. Espinoza sent a presentation to Exsan via email and WhatsApp, but Exsan has not submitted any such emails or WhatsApp messages. There is no declaration or exhibit identifying the time or manner in which the presentation was sent.

> Q As you sit here today, do you know of anything that Roberto [Suarez] told you that was false?
> A No.

Transcript at 27.

Exsan does not explain why the Court should accept its attorney's assertions now, when the witness's undisputed, sworn testimony was to the contrary. Indeed, Exsan's counsel made these same arguments about reliance on unidentified false claims during the hearing and the Court correctly rejected them as inadequately supported by evidence.

It is axiomatic that, under Rule 59(e), a "motion for reconsideration may not present evidence or raise legal arguments that could have been presented at the time of the challenged decision" *White v. Sabatino*, 424 F. Supp. 2d 1271, 1276 (D. Haw. 2006). But that is exactly what Exsan is attempting to do. If it had any doubts about the government's presentation, that presentation was also publicly filed more than a month before the hearing. Exsan had notice of the restitution hearing on July 17, 2025. Its counsel attended and advocated on its behalf. It does not claim to have been surprised by defendant's arguments against restitution – which had also been presented in publicly filed opposition. Its counsel presented evidence in support of its claim for restitution but evidently wishes he had prepared better. Now, with even more time to prepare and submit evidence in support of its claim for restitution, Exsan still fails to address the issue identified by the Court in the restitution hearing when it denied Exsan's request for restitution.

None of this presents the type of unusual circumstances meriting reconsideration under Rule 59(e) and the Court's ruling was correct anyway.

**B. Rule 60(b) Does Not Apply and Exsan Cannot Meet Its Requirements Anyway.**

Rule 60(b) affords even less of a plausible basis for relief. Whereas Rule 59(e), if it applies at all, contemplates "a motion to alter or amend a judgment," Exsan does not explain how 60(b) could ever apply to its motion. Pursuant to Rule

60(b) the Court "may relieve a party or its legal representative from a final judgment" for any of six, listed reasons. However, Exsan is *not* a party in this action, nor is it subject to a final judgment (which is a judgment entered by the Court against Carlos Santos). Exsan apparently wishes it were a beneficiary of the judgment entered against Mr. Santos, but that does not render it a "party" with a basis for seeking relief from the judgment entered against Mr. Santos. If either of these rules applies, it is Rule 59(e), not Rule 60(b).

Meanwhile, if Exsan were a party subject to the judgment in this case, it would still fail to meet Rule 60(b)'s exacting standard. The Rule permits relief for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Subsections 2, 3, 4, and 5 are plainly inapposite. Any claim under subsection (b)(6) would require Exsan to demonstrate "extraordinary circumstances" preventing timely action. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Exsan does not even claim to have satisfied that high bar.

That leaves Exsan's only invocation of any of Rule 60(b)'s language: its claim to "surprise when it realized" the Government had not presented evidence it had previously provided. Motion at 6. For the reasons set forth above, this argument is unavailing on its merits.

Furthermore, "[r]ule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006). Generally, "parties are bound by the

actions of their lawyers." *Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1260 (9th Cir.2004). Even if an attorney's failure to prepare or litigate effectively amounts to malpractice, such malpractice would "not usually provide a basis to set aside a judgment pursuant to Rule 60(b)(1)." *Id.* Nor do ignorance or carelessness on the part of counsel. *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992).

Here, Exsan's interests in restitution were ably represented by *two* attorneys – that of the prosecutor and of its private counsel. Exsan's exhibits here acknowledge that its counsel was retained by at least June 27, 2024 – more than a year before the restitution hearing. Exhibit 9 at 5. Both the prosecutor and Exsan's private counsel had an opportunity to present their best evidence and arguments on July 17, 2025, and the Court correctly found them lacking. Exsan's disappointment with the ruling is not the type of 'surprise' contemplated by Rule 60(b)(1). Nor does Exsan explain why its counsel was unable to prepare or adequately present its evidence regardless of its hope the government would submit more. "[I]f failure to submit evidentiary materials is solely due to [an] attorney's carelessness, then it would be an abuse of discretion for the court to grant Rule 60(b) relief." *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992) (citing *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990)).

Exsan's invocation of Rule 60(b)(1) is, at best, an invitation to reversible error. Since Rule 60 simply does not apply in this context or to Exsan as a non-party and no other subsection of Rule 60(b) could conceivably afford a basis for relief, the Court should reject Exsan's motion insofar as it is construed under Rule 60(b) and the Court concludes that the Rule has any application in these criminal proceedings.

* * *

For the foregoing reasons, the Motion should be denied in its entirety.

Respectfully submitted,

McKENZIE SCOTT, PC

Dated: August 20, 2025

By: */s/Marcus S. Bourassa*
MARCUS S. BOURASSA
TIMOTHY A. SCOTT
*Attorneys for Defendant Carlos Manuel da Silva Santos*